## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ESTANCIAS DE CERRO MAR, INC.,** | |
| **Plaintiff,** | **Case No. _____ (___)** |
| **vs.** | |
| | **Re: Injunctive and Declaratory Relief** |
| **PUERTO RICO AQUEDUCT AND SEWER AUTHORITY ("PRASA") and DORIEL I. PAGÁN-CRESPO, in her official capacity as Executive President of PRASA,** | |
| **Defendants.** | **Request for Trial by Jury** |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff, **Estancias de Cerro Mar, Inc.**, through its undersigned attorneys and very respectfully alleges and prays as follows against defendants **Puerto Rico Aqueduct and Sewer Authority** and **Doriel I. Pagán-Crespo**, in her official capacity as Executive President of PRASA:

## I. JURISDICTION

1.      The Court has subject matter jurisdiction over the claims asserted in this Complaint under 28 U.S.C. § 1331. The present causes of action are brought under 42 U.S.C. § 1983 and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, against defendants Puerto Rico Aqueduct and Sewer Authority ("PRASA") and Doriel I. Pagán-Crespo in her official capacity as Executive President of PRASA. Defendants have acted under color of state law to violate, and continue to violate, Plaintiff's rights under the Constitution of the United States of America ("Constitution"). Specifically, defendants have violated the Constitution's Fourteenth Amendment Due Process Clause, the Equal Protection Clause and the Fifth Amendment Takings

1

Clause.  Pursuant to 28 U.S.C. § 1367(a), the supplemental jurisdiction statute, Plaintiff also brings

a claim under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 §§ 5141 and

5142, as amended, and in the alternative based on unjust enrichment. Plaintiff requests preliminary

and permanent injunctive and declaratory relief.

## II.   PARTIES

2.   Plaintiff, Estancias de Cerro Mar, Inc. ("Estancias") is a private corporation

incorporated under the laws of the Commonwealth of Puerto Rico, with legal capacity to sue and

be sued. Estancias was created to develop and construct residential communities on the North Coast

of Puerto Rico. Estancia's address is Carr. # 690 Km. 5.8, Vega Alta, Puerto Rico, 00692.

3.   Defendant PRASA is a public corporation and an autonomous governmental

instrumentality of the Commonwealth of Puerto Rico, organized and existing under the Laws of the

Commonwealth of Puerto Rico.  *See*, Act 40 of May 1, 1945, PR Laws Ann. Tit 22 § 142 *et sec.*

PRASA has the capacity to sue and be sued, PR Laws Ann. Tit. 22 § 144(c), and was created  to

provide drinking water and sewage facilities to the citizens of Puerto Rico. PRASA's postal address

is P.O. Box 7066, San Juan, Puerto Rico 00916-7066.

4.   Defendant Doriel I. Pagán-Crespo is a natural person who occupies the position of

Executive President of PRASA. She is sued in her official capacity. Her postal address  is P.O. Box

7066, San Juan, Puerto Rico 00916-7066.

## III.   NATURE OF THE CASE

5.   This case is brought by Estancias as a result of PRASA's violations of Estancias'

constitutional rights, including  PRASA's  taking of Plaintiff's property without just compensation

*via* the unlawful, arbitrary, and capricious implementation/use of its *Regulation of Permits for

Construction Plans of the Puerto Rico Aqueduct and Sewer*, issued  pursuant to Act No. 7 of July

19, 1985 ("Regulation of Permits"), in relation with  Estancias' wastewater relay pump station ("Estancias Pump Station") .  That regulation established a system for certifying construction plans and projects related to fresh water and sewage water systems to be either connected to PRASA's systems or transferred to PRASA. Estancias' Pump Station is connected to PRASA's system. PRASA has illegally implemented said regulation to force Estancias to operate and maintain its wastewater relay pump station so as to subsidize PRASA's operations in the Cerro Gordo Ward of Vega Alta ("Cerro Gordo Ward"), with the effect of appropriating  Estancias' capital and pump station to  pump  the Cerro Gordo Ward communities' sewage to PRASA's wastewater treatment plant in Dorado.  In sum, Estancias has and is being forced to use its private property and capital to provide a  public service to  the Ward's community which  PRASA should be providing.  At the same time,  PRASA has refused and continues to refuse  to either compensate Estancias for the costs of operation and maintenance of the Estancias Pump Station that it has appropriated and/or assume said operation and maintenance and/ or accept the transfer of said station. While PRASA was appropriating the Estancias Pump Station for the benefit of PRASA without compensation, Estancias was forced to operate and maintain its pump station at a cost of over $5,000,000, leading Estancias to insolvency.  Indeed, by administering its Regulation of Permits in a manner that  forces Estancias to provide the community and PRASA with services at Estancias' sole cost, PRASA receives significant economic benefit from said services, as it charges the Cerro Gordo Ward's community monthly (i) *sewage fees*, (ii) *Environmental and Regulatory Compliance Fees* and (iii) *Special Fees* in part for the  services rendered by Estancias without compensation.

PRASA's conduct and implementation of its Regulation of Permits as set forth above,  was without  adequate notice or process to Estancias, in violation of its due process rights.

Additionally, PRASA has  arbitrarily and capriciously implemented its Regulations Nos. (i) 5129 (Código de Tomas o Descargas Clandestinas, Hurto de Agua, Maipulación de Contadores y Otros Accesorios Propiedad de la Autoridad de Acueductos y Alcantarillados), (ii) 6658 (Rules and Regulations for the Supply of Water and Sewer Services) and (iii) 8901 (Sobre el Uso de los Servicios de Agua y Alcantarillado Sanitario de Puerto Rico), all of which prohibit residents from connecting their stormwater drainages to PRASA's sewer collection system, by allowing for the improper and unauthorized connections of (a) stormwater drainages and (b) excessive residential and commercial units to its wastewater collection system, which delivers sewage to the Estancias Pump Station — again without adequate notice or process to Estancias — while also failing to provide general maintenance to its wastewater collection system connected to the Estancias Pump Station, further violating Estancias' due process rights and exposing it to Clean Water Act violations.

Further, PRASA's implementation of its Regulation Nos. 5129, 6658 and 8901 resulted in improper and unauthorized connections of excessive residential and commercial units that deliver sewage to the Estancias Pump Station.  This, together with PRASA's acceptance of a pump station from another residential community that relays sewage to Estancias Pump Station, while refusing to compensate Estancias for the costs of operation and maintenance of the Estancias Pump Station, assume its operation and maintenance or accept Estancias Pump Station, constitutes discriminatory and irrational conduct that is devoid of any legitimate State interests and constitutes  a violation of Plaintiff's right to an equal protection of the laws.

PRASA's conduct has led Estancias to insolvency, as well as the issuance of an Environmental Protection Agency Clean Water Act Order (CWA-02-2020-3106) exposing Estancias to significant civil and criminal penalties.

## IV.    DETAILED ALLEGATIONS

### A.  The Palmas Urbanization, the Estancias Pump Station and PRASA's Conduct

6.      Estancias  developed  a residential urbanization in the Cerro Gordo Ward called "Las Palmas de Cerro Gordo" ("Palmas Urb."), comprising approximately 175 residential units.

7.      To secure the necessary development and construction permits for the Palmas Urb. project, Estancias was required, *among other things*, to design and construct the urbanization's (i) rainwater collection system, (ii) wastewater collection system and (iii) a wastewater relay pump station (previously defined as the "Estancias Pump Station") to serve the development's 175 residential units.

8.      All design and construction costs for that infrastructure were paid for exclusively by Estancias and such infrastructure was to be transferred/donated to the Municipality of Vega Alta ("Municipality") and/or PRASA. Thus, both the Municipality and PRASA would receive said infrastructure *free of charge*.

9.      PRASA required the development and construction of the Estancias Pump Station to relay Palmas Urb. residents' wastewater from PRASA's wastewater collection system to PRASA's *miles long* sewer main line, which leads Cerro Gordo Ward's sewage Eastbound to PRASA's wastewater treatment plant ("WWTP") located in the town of Dorado.

10.     Without PRASA's authorization and approval of the projects' sewer system, Estancias would not have been authorized to develop Palmas Urb.

11.     Indeed, PRASA was directly involved in the entire design and construction process of both the (i) wastewater collection system and the (ii) Estancias Pump Station. It supervised, approved, and inspected the entire design and construction process, from determining the Estancias

Pump Station's technical capacities and equipment to its final construction. That is because PRASA is the entity designated by Law as responsible for providing water and sewage services in Puerto Rico. See, PR Laws Ann. Tit. 22 Sec. 141 *et. sec.* Notably, to this day, the sole party possessing the PRASA-approved design and construction plans for said pump station is PRASA itself.

12.    Upon completion of the Palmas Urb. the Estancia Pump Station was connected to PRASA's system. Further, Estancias transferred the rainwater collection system to the Municipality *via* a stormwater right of way deed, as required by law.

13.    Upon completion of the Palmas Urb., the wastewater collection system was automatically transferred to PRASA *per operation of law*. The sewer pipes of that wastewater collection system feed Palmas Urb.'s raw sewage into the Estancias Pump Station.

14.    The end result of the regulatory scheme imposed on Estancia for the development of Palmas Urb. is that PRASA receives and benefits from the use of Estancias' privately built water and sewage infrastructure, *free of charge*. And PRASA also benefits from the *exclusive right* to charge the people of Puerto Rico fees for water and sewage services provided by Estancias' privately built infrastructure.

15.    Despite PRASA (a) having approved, on June 21, 2000, the design of the Estancias Pump Station as required under its Regulation of Permits, (b) despite Estancias having constructed based on those plans, and (c) despite PRASA receiving and benefiting from the use of the Estancias Pump Station *free of charge*, PRASA has refused to compensate Estancias for the costs of operation and maintenance of the Estancias Pump Station, assume its operation and maintenance, or accept Estancias Pump Station. Moreover, PRASA has so refused to comply with its legal and

moral responsibilities even after demanding from Estancias numerous upgrades and improvements to said station, some of which are *arbitrary and capricious* and never-ending.

16.    PRASA has *arbitrarily and capriciously* refused to compensate Estancias for the costs of operation and maintenance of the Estancias Pump Station, assume its operation and maintenance and has imposed pre-conditions to the Estancias Pump Station transfer because **it never intended to so compensate, operate and maintain or accept its transfer**.  By refusing to accept the same  it forces Estancias to operate and maintain the Estancias Pump Station and provide a public service to the community at Estancias' sole cost, while PRASA benefits from said operation and maintenance, to the tune of millions of dollars. Additionally, by continuously shifting the requirements for acceptance, PRASA has deprived Estancias of any meaningful opportunity to challenge PRASA's arbitrary and capricious refusal by any administrative or judicial forum.

17.    PRASA's decision to not accept the Estancias Pump Station and to refuse to cover its operational and maintenance costs is final. Notably, on June 10, 2019 and again June 9, 2020, Estancias provided PRASA with letters of Intent to Transfer, which specifically addressed PRASA's refusal to provide the financial support needed to operate the Estancias Pump Station and notice of unauthorized connections.  PRASA did not respond to either. On numerous other occasions, PRASA denied request for assistance with the operation and maintenance of the said station.

18.    Estancias has incurred in significant day-to-day efforts to operate and maintain its pump station, depleting all of its capital while providing a public sewage service that *exclusively benefits* PRASA and the Cerro Gordo Ward's community.  All the while, PRASA has delayed, shirked, and obstructed its obligation to compensate Estancias for the costs of operation and

maintenance of the Estancias Pump Station, including its electric services cost, or to assume the operation and maintenance of said station and/or accept the Estancias Pump Station's legal title. Instead, it has illegally imposed those costs on Estancias while simultaneously denying Estancias any opportunity to challenge the same and while PRASA benefits from the same.

19.     PRASA has capriciously and arbitrarily maintained  the *status quo* by shifting design and construction requirements with no connection to PRASA's or the Commonwealth of Puerto Rico's legitimate interest, because Estancias cannot unilaterally stop operating and maintaining  the Estancias Pump Station because doing so would cause wastewater spills in the local community and expose it to prosecution by the Environmental Protection Agency ("EPA") under the Clean Water Act. Such violations carry serious civil and criminal penalties.

20.     As mentioned, PRASA's actions as described above have caused Estancias to become insolvent.  Estancias has been unable to cover the Estancias Pump Station's electric costs, causing the Puerto Rico Electric Power Authority to cutoff electric power to the same.  The station has been working with an external pump and an emergency generator while Estancias attempted to elicit PRASA's help to cover the electric service bill.  PRASA has refused all help.

21.     PRASA is the sole owner and operator of the (i) Palmas Urb. wastewater collection system, (ii) the sewer main leading to the WWTP in Dorado, and (iii) that WWTP.  The Estancias Pump Station is merely the "middleman" which receives Palmas Urb.'s wastewater into its wet well and immediately pumps/relays that wastewater to PRASA's sewer main leading to the Dorado WWTP.  Cerro Gordo Ward's community and PRASA are the sole beneficiaries.

22.     While PRASA denies Estancias financial support for the service provided by the Estancias Pump Station, PRASA charges all the Palmas Urb. residents monthly *Sewage Fees* equivalent to approximately 80% of their freshwater consumption fees. PRASA has charged

8

millions of dollars in such fees to Palmas Urb. residents.  However, it has never provided Estancias with a single dollar to help cover the costs related to the operation and maintenance of the Estancias Pump Station.  Instead, PRASA has chosen to collect a windfall at the expense of Estancia's constitutionally protected due process, equal protection, and property rights.

23.     Moreover, PRASA has also charged <u>all</u> of the Palmas Urb. residents over a million of dollars based upon its monthly *Environmental and Regulatory Compliance Fees*. Upon information and belief, said fee is imposed to cover PRASA's costs related to addressing wastewater management issues and to comply with payment of penalties imposed by the EPA based on Clean Water Act violations.  As noted above, however, those fees have not gone toward wastewater management, as PRASA has imposed the sole burden of shouldering costs related to the  Estancias Pump Station on Estancias.

24.     PRASA has also charged thousands of dollars to <u>all</u> of the Palmas Urb. residents through a monthly *Special Fees* set at $2.00. Upon information and belief, said fee is imposed to cover PRASA's costs related to addressing wastewater management issues. Again, despite collecting that fee, PRASA has never provided Estancias any funds to cover costs related to the Pump Station.

25.     Thus, a Palmas Urb. resident charged a monthly fee of $75.00 for freshwater consumption by PRASA would simultaneously be billed fees of $126.00 related to wastewater disposal essentially provided by the Estancias Pump Station.  Thus, their total <u>monthly</u> water bill would be approximately $200.00

26.     The effect of PRASA's refusal to either receive transfer of the Estancias Pump Station or help cover operational and maintenance costs of the same, for services that said station provides, and for which PRASA invoices Palmas Urb. Residents, has been to deplete Estancias'

capital without any just compensation.  Estancias estimates said taking without due process at five million dollars ($5,000,000.00).

27.     The aforementioned is part of a scheme implemented by PRASA.  Estancias has learned via the EPA that there are currently approximately two hundred and twenty (220) privately constructed and owned  pump stations in Puerto Rico, similar to the Estancias Pump Station,  that are also being appropriated to serve and benefit PRASA, which has developed and maintains that illegal practice to improperly save tens of millions of dollars a year in operation and maintenance, forcing others to provide public services to PRASA's clients, while PRASA profits  from the services provided  by said privately constructed and owned  pump stations.

**B.     Villa Alegria Community,  Estancias Pump Station and PRASA's Conduct**

28.     The Puerto Rico Housing Department ("Housing Department"), a public corporation and instrumentality of the Commonwealth of Puerto Rico, developed a low-income housing project for certain Cerro Gordo Ward residents. The plot of land upon which the project was erected had  been the subject of  an unauthorized  physicall invasion of government property by citizens seeking housing. Thus, the residential project would serve to grant low-income residents already living in said property lawful and appropriate housing. It was named Villa Alegria and was constructed just South and adjacent to Palmas Urb.

29.     At the bequest of the Housing Department and the Municipality, in good faith, Estancias agreed to allow the Housing Department to connect 146 residential units of Villa Alegria to the Estancias Pump Station. That alternative was made possible because Estancias had eliminated the possibility of developing a second phase of the Palmas Urb.

30.     The Housing Department and the Municipality elicited Estancias' help because the majority of the Cerro Gordo Ward, including the Carmelita Sector comprising hundreds of

residential units adjacent to the Palmas Urb. and Villa Alegria, lacked access to a wastewater collection system. Thus, Villa Alegria needed access to the Estancias Pump Station to relay its sewage to the Dorado WWTP.

31.     Further, the Housing Department had to develop and construct its own wastewater relay pump station ("Villa Alegria Pump Station") for Villa Alegria, because the land's topography lacked the slope necessary to allow sewage to travel by gravity to the PRASA's wastewater collection system and to the Estancias Pump Station.

32.     Upon completion of Palmas Urb., the Villa Alegria wastewater collection system, including the Villa Alegria Pump Station, was automatically transferred to PRASA. The sewer pipes of that wastewater collection system feed Villa Alegria's raw sewage into the PRASA sewer main and into the Estancias Pump Station.

33.     Upon completion of the Villa Alegria development, PRASA *promptly accepted the transfer* of the Villa Alegria Pump Station.  Thus, PRASA currently owns, operates, and maintains the Villa Alegria Pump Station, which relays its swage to the Estancias Pump Station.

34.     PRASA authorized and approved the design and construction of the Villa Alegria Pump Station, including its connection to the sewer lines that feed Villa Alegria's raw sewage into the Estancias Pump Station.

35.     Meanwhile, PRASA charges <u>all</u> Villa Alegria residents monthly *Sewage Fees* equivalent to approximately 80% of their freshwater consumption fees. PRASA has charged millions of dollars in such fees. However, it has never provided Estancias with a single dollar to help cover the  costs  related to the Estancias Pump Station's services rendered to Villa Alegria.

36.     PRASA has also charged <u>all</u> Villa Alegria residents the previously mentioned monthly *Environmental and Regulatory Compliance Fees*, which upon information and belief is fixed at $63.00, and the monthly *Special Fees* set at $2.00.

37.     In sum, a Villa Alegria resident charged a monthly fee of $75.00 for freshwater consumption by PRASA would simultaneously be billed fees of $126.00 related to wastewater disposal matters for that consumption, for a total <u>monthly</u> water bill of approximately $200.00.

38.     Despite collecting sewage fees, the *Environmental and Regulatory Compliance Fees* and the *Special Fees* from the Villa Alegria residents, PRASA has never provided Estancias with a single dollar to help cover the costs related to the Estancias Pump Station's services rendered to Villa Alegria.

39.     Further, and to Estancias' detriment, PRASA has not operated the Villa Alegria Pump Station adequately.  For example, PRASA does not remove or chop solids and cloth debris deposited by Villa Alegria residents before pumping such sewage to the Estancias Pump Station, nor does it prohibit rainwater runoff connections to the same system. That deficient operation results in excess amounts of effluent and solids being deposited in the Estancias Pump Station, causing malfunctions and a significant increase in maintenance costs.

### C.     <u>PRASA's Failure to Implement its Regulation and Provide Maintenance</u>

40.     PRASA is the sole owner and operator of (i) the Palmas Urb. wastewater collection system, (ii) the Villa Alegria wastewater collection system, (iii) the Villa Alegria Pump Station, (iv) the sewer pipes and mains leading to the Estancias Pump Station and subsequently to the WWTP in Dorado, and (v) said WWTP in Dorado.  Further, it owns other pump stations in the Cerro Gordo Ward and adjacent areas. Upon information and belief, all of those pump stations are deficient and/or being operated inadequately.

12

41.     Upon information and belief, the only privately owned pump station in the zone is Estancias Pump Station.  As a "middleman" relay station it receives the Palmas Urb. and Villa Alegria's wastewater and is directly affected by PRASA's wastewater collection system. Unfortunately, PRASA <u>does not provide adequate maintenance</u> to its sewer lines, sewer mains, and other pump stations in the Cerro Gordo Ward.

42.     As a result, PRASA's pump stations in the Cerro Gordo and Breñas Wards are <u>all</u> currently under a Consent Decree with the EPA due to repeated environmental violations and faulty infrastructure.  Notably, the Villa Alegria Pump Station is included it the Consent Decree. *See*, Civil Case No.: 15-2283 (JAG).

43.     Said lack of maintenance by PRASA was without notice to Estancias, and it has caused — and continues to cause — clogs and wastewater spills from manholes in the Cerro Gordo Ward.

44.     Adding further injury, Estancias recently learned that PRASA had connected approximately twenty (20) additional *unauthorized* Villa Alegria residential units to the Villa Alegria Pump Station. This significantly increases the amount of sewage received at the Estancias Pump Station. PRASA made those connections without providing Estancias notice or seeking its consent or providing compensation. Such conduct requires PRASA to indemnify, defend, and hold Estancias harmless for any liabilities and/or malfunctions caused by PRASA's connection of the Villa Alegria Pump Station to the Estancias Pump Station.

45.     Upon information and belief, PRASA has also connected additional residential and commercial units in the La Carmelita Sector of the Cerro Gordo Ward to its wastewater collection system, further depositing sewage in the Estancias Pump Station. PRASA made those connections without providing Estancias notice, seeking its consent, or providing compensation. Upon

information and belief, there may be over fifty (50) additional unauthorized residential and commercial units connected to the system.

46.     The EPA recently provided Estancias' with a PRASA aerial photograph of Palmas Urb. and Villa Alegria, which identified the residential units connected to PRASA's wastewater collection system that deposits sewage in the Estancias Pump Station.  Notably, that marked aerial photograph also suggests that PRASA has in fact connected, without notice to Estancias, a portion of La Carmelita Sector and numerous other adjacent residential and commercial units to its wastewater collection system, as mentioned at Paragraph 45.

47.     PRASA's unauthorized connections, without providing Estancias notice or seeking its consent or providing compensation, affect Estancias because the Estancias Pump Station was not designed to handle the sewage of so many residential and commercial units.

48.     Additionally, PRASA has allowed residents in the Palmas Urb. and Villa Alegria to connect their stormwater drainages to PRASA's wastewater collection system, causing a significant increase in waterflow when rains fall in the zone. Such connections, made without providing Estancias notice, or seeking its consent, or providing compensation constitute an arbitrary and capricious implementation of PRASA's Regulations Nos. 5129, 6685 and 8901 and also entail violations to the same .

49.     PRASA's arbitrary and capricious  implementation of  Regulations 5129, 6685 and 8901 and its allowing illegal stormwater connections affects Estancias because its pump station was not designed to handle the volume of effluent/rainwater deposited by all of the residential and commercial units in the Cerro Gordo Ward currently connected to PRASA's system.

50.     PRASA's failure to maintain its wastewater collections system, along with the connection of excessive residential and commercial units to the system and the allowance of

stormwater connections, has caused sewage spills that will continue to occur because the Estancias

Pump Station was not designed to handle such volume of sewage and rainwater. Thus, Estancias

has been and continues to be exposed to violations of the CWA and to prosecution by the EPA.

Notably, Estancias has already been exposed to EPA Administrative Complaints and Orders,

including CWA-02-2011-3356, CWA-02-2015-3110 and CWA-02-2020-3106.  In sum, being

forced to operate a wastewater relay pump station for PRASA is risky because PRASA's conduct

and omissions expose the owner of the station to severe civil and criminal penalties, particularly

in a jurisdiction where PRASA's renowned non-compliance with the CWA is frowned upon *but*

*allowed*.

## V.   CAUSES OF ACTION

## A.   FIRST CAUSE OF ACTION: TAKING OF PROPERTY WITHOUT JUST COMPENSATION

51.     Plaintiff incorporates by reference each and every allegation contained in

paragraphs 1 through 50 as if fully set forth herein.

52.     PRASA has violated Estancias' Constitutional rights by way of PRASA taking

Plaintiff's property without just compensation *via* the unlawful and unauthorized

implementation/use of its *Regulation of Permits*, subject to Act No. 7 of July 19, 1985, forcing

Estancias to subsidize PRASA's operations without any  compensation.

53.     Additionally, to the extent PRASA refuses to compensate Estancias for the costs of

operation and maintenance of the Estancias Pump Station,  assume  the operation and maintenance

of said station, and/or  accept the Estancias Pump Station's  transfer, PRASA has physically taken

Plaintiff's property and/or deprived Estancias of all economically beneficial use of its property

and/or interfered with Plaintiff's use of its property, by connecting additional units to infrastructure

linked to said pump station, forcing sewage and storm water into the same, causing damage to and

occupying the same against Plaintiff's will.  PRASA has provided Plaintiff with no compensation for its use  of the Estancias Pump Station or for depriving Estancias of its use.

54.     Constitutionally, PRASA cannot enforce *Regulation of Permits* to force Estancias to subsidize PRASA's operations, particularly while PRASA charges its clients, served by the Estancias Pump Station, significant sewage and environmental-related fees on a monthly basis. Said acts by PRASA under color of state law have and continue to deprive Estancias of its federal constitutional rights and have caused Estancias to become insolvent.

55.     In sum, Estancias has been forced by PRASA to provide the Cerro Gordo Ward with a service from which PRASA institutionally and economically benefits, while arbitrarily and capriciously refusing to compensate Estancias for said service and/or accepting the Estancias Pump Station.

56.     PRASA has used  shifting requirements purportedly necessary to accept the Estancias Pump Station, while failing to compensate Estancias for the costs of operation and maintenance of the Estancias Pump Station or assume its operation and maintenance, to purposely avoid accepting legal title to the Estancias Pump Station,  simultaneously forcing Plaintiff to solely use the property to provide a public service to the community without compensation and depriving Plaintiff of any meaningful opportunity to challenge PRASA's actions in an administrative or judicial forum.

57.     Estancias has requested on various occasions that PRASA curtail its aforesaid conduct, but PRASA reached a final decision to continue engaging in the same. Notably, such conduct has led Estancias to insolvency.

58.     Plaintiff is entitled to have this Court declare that PRASA's implementation of the regulation in question, along with PRASA's physical occupation of the Estancias Pump Station by

16

way of connecting excessive residential and commercial units to the system, as well as allowing illegal stormwater connections, constitute a taking of Plaintiff's property, for which Plaintiff is entitled to just compensation in excess of $5,000,000.

**B.**     **SECOND CAUSE OF ACTION: VIOLATION OF  DUE PROCESS**

59.     Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 58 as if fully set forth erein.

60.     PRASA's implementation of its *Regulation of Permits* has deprived Estancias of its property interest in the Estancias Pump Station without due process.  As set forth above, PRASA has failed to maintain its wastewater collections system, has connected excessive residential and commercial units to  said  system, and  has allowed  illegal stormwater connections to said system, all without providing Estancias notice or seeking its consent or providing compensation.

61.     Since the Estancias Pump Station was not designed to handle the volume of sewage and rainwater imposed on it by PRASA through said actions,  not only have sewage spills occurred that expose Estancias to civil and criminal penalties, but also the spills have encumbered and impaired  the Estancias Pump Station.  Indeed, Estancias has become insolvent trying to deal with and manage said encumbrance and  impairment and trying to avoid said spills.

62.     PRASA's orders and decisions to arbitrarily and discriminatorily require Estancias to invest additional hundreds of thousands of dollars in the Estancias Pump Station for PRASA to purportedly consider its transfer, without providing Estancias with due process to establish  the true needs for the additional expenditure or with the requirements for such transfer, are aimed at disguising PRASA's intent to force Estancias to continue to subsidize PRASA's operations while the latter receives millions of dollars for services that Estancias is providing.  Said application of the *Regulation of Permits* is irrational and arbitrary and violates the due process of law.

63.     PRASA's use of shifting requirements to accept the Estancias Pump Station, while failing to compensate Estancias for the costs of operation and maintenance of the Estancias Pump Station or assume its operation and maintenance is being implemented to deprive Plaintiff of any meaningful or adequate process to challenge PRASA's actions in an administrative or judicial forum of the Commonwealth of Puerto Rico

64.     In sum, Estancias has and continues to provide the Cerro Gordo Ward with a service which PRASA institutionally and economically benefits from, while PRASA arbitrarily and capriciously refuses to provide adequate process to compensate Estancias for the costs of operation and maintenance of the Estancias Pump Station, assume its operation and maintenance, or transfer the Estancias Pump Station to PRASA.

65.      PRASA has implemented its regulations in violation of the requirements of the Due Process Clause, and Plaintiff is entitled to have this Court declare as much. Further, Plaintiff is entitled to just compensation in excess of $5,000,000.

C.     **THIRD CAUSE OF ACTION: EQUAL PROTECTION OF THE LAWS**

66.     Plaintiff incorporates by reference each and every allegation contained in paragraph 1 through 65, as if fully set forth herein.

67.     PRASA's  failure to adequately maintain its wastewater collection system connected to the Estancias Pump Station, its failure to implement its Regulation Nos. 5129, 6685 and 8901 prohibiting residents from connecting their rainwater drainages to PRASA's sewer collection system, and its enabling the connection in an unauthorized fashion of numerous additional residential and commercial units to its wastewater collection system that deposit sewage in the Estancias Pump Station, are not rational means to serve a legitimate end for PRASA or the public interest. Such unchecked conduct encumbers and impairs Estancias' property and causes

sewage spills at manholes in the Cerro Gordo Ward that expose Estancias to EPA Administrative Complaints and Orders, as well as to potential severe civil and criminal penalties, in violation of Plaintiff's rights to an equal protection of the laws.

68.     Further, and as evidence by the disparate treatment of the Estancias Pump Station vis-à-vis the Villa Alegria Pump Station, PRASA has treated Estancias in a discriminatory fashion to force it to subsidize PRASA's operations in the Cerro Gordo Ward.

69.     That discriminatory treatment of Plaintiff is unlawful, encumbers and impairs Estancias' property, and exposes Plaintiff to CWA violations/prosecution—all with the purpose of illegally encumbering and impairing Estancias's  property to subsidize PRASA's operations, without any rational relationship to any legitimate interest of PRASA and/or the Commonwealth of Puerto Rico or any legislative goal. Plaintiff is entitled to just compensation in excess of $5,000,000.

**D.     FOURTH CAUSE OF ACTION: VIOLATION OF STATE LAW**

70.     Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 69, as if fully set forth herein.

71.     This cause of action arises under Articles 1802 of the Puerto Rico Civil Code, 31 Laws of PR Ann. §§ 5141, and is asserted against all Defendants.

72.     Pursuant to Article 1802 of the Puerto Rico Civil Code, id., a person that causes damages to another because of fault or negligence is required to repair or indemnify the damages caused.  Here, PRASA willfully and negligently has exposed and continues to expose Estancias to potential CWA violations/prosecution and is illegally encumbering and impairing Estancias' property to subsidize PRASA's operations.

73.     PRASA has acted with fault and/or negligence, and those actions were and are the proximate cause of Plaintiff's damages, which are estimated to be no less than $5,000,000.00.

**E.    FIFTH CAUSE OF ACTION: ALTERNATIVE CLAIM FOR UNJUST ENRICHMENT**

74.     Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 73, as if fully set forth herein.

75.     Assuming, in the alternative, that the Court holds that Estancias does not have a cause of action under the those alleged above, PRASA has nevertheless unjustly enriched itself by forcing Estancias to operate and cover all operational expenses related to the Estancias Pump Station, while PRASA charged millions of dollars in sewage fees to the Palmas Urb. and Villa Alegria residents.

76.     PRASA was enriched by said conduct. Meanwhile, Estancias has been impoverished by PRASA's efforts to force it to operate and pay for all operational costs related to the Estancias Pump Station which PRASA utilizes and benefits from daily.  PRASA's enrichment and Estancias' impoverishment have a causal connection.

77.     No cause justifies PRASA's forcing Estancias to operate and pay for all operational costs related to the Estancias Pump Station, which PRASA utilizes and benefits from daily.

78.     PRASA's conduct has allowed it to unjustly enrich itself at Estancias' detriment, and those actions were and are the proximate cause of Plaintiff's impoverishment, which is estimated at no less than $5,000,000.00.

**F.    SIXTH CAUSE OF ACTION: DECLARATORY AND INJUNCTIVE RELIEF**

79.     Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 78, as if fully set forth herein.

80.     Pursuant to the provisions of the Federal Declaratory Judgment Act 28 U.S.C. § 2201, et seq., Plaintiff seeks a declaration from this Court to the effects that the decisions, acts, and orders of PRASA under the *Regulation of Permits* and Regulation No. 5129 are unconstitutional inasmuch as:

      a.      They confiscate Estancias' property;

      b.      Violate Estancias' right to due process;

      c.      Deprive Estancias of the equal protection of the laws.

81.     Pursuant to the provisions of the Federal Declaratory Judgment Act, this Court should declare that PRASA's acts described above are inconsistent with the purposes of the *Regulation of Permits* and Regulation No. 5129.

82.     Pursuant to Fed. R. Civ. P. 65 (a), Plaintiff requests that a preliminary and eventually a permanent injunction be issued to force defendants to:

      a.      Require PRASA to compensate Estancias for costs incurred by it in operating and maintaining the Estancias Pump Station;

      b.      Require PRASA to operate and maintain the Estancias Pump Station or accept the transfer of said station's legal title;

      c.      Immediately disconnect all residential and commercial units that deposit sewage into the Estancias Pump Station from PRASA's sewer collection system beyond the said pump station's capacity;

      d.      Immediately disconnect all stormwater connections at residential and commercial units which deposit sewage into the Estancias Pump Station from PRASA's sewer collection system,

    e.   Create a temporary mechanism for plaintiff to recover the losses it has experienced on account of the unconstitutional acts and decisions herein mentioned.

    f.   Create a permanent mechanism for Plaintiff to recover the totality of losses it has experienced on account of the illegal and unconstitutional acts and decisions herein mentioned over the course of its operation of the Estancias Pump Station.

## VI.    PETITION

**WHEREFORE**, Plaintiff requests this Honorable Court to grant the abovementioned remedies together with compensatory damages against Defendants, pre- and post-judgment interest as allowed by law, reasonable attorneys' fees and costs incurred in bringing and prosecuting the causes of action contained in this Complaint, and such other relief as the Court deems just and proper.

## VII.    RESERVATION OF RIGHTS

Estancias reserves the right to further amend this Complaint, upon completion of further investigation, to assert any additional claims for relief against PRASA or other parties as may be warranted by law.

## VIII.    JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all counts so triable.

## IX.   VERIFICATION

I hereby certify, under 28 U.S.C. § 1746, that to the best of my knowledge and understanding the forgoing information contained in the eighty-two (82) paragraphs of this Complaint and additional sections is true and correct. I do so under penalty of perjury, on this **21** day of November 2020, in Corozal, Puerto Rico.

Hector Luis Rivera Montesino
Estancias de Cerro Mar, Inc.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 21st day of November, 2020.

**Trebilcock LLC**
Metro Office Park
BDG 11, Suite 105ª
Phone No.  (787) 399-1969

s/Thomas Trebilcock-Horan
USDC - PR No. 220514
tt@trebilcockllc.com

**PIETRANTONI MÉNDEZ & ÁLVAREZ LLC**
208 Ponce de León Avenue
Popular Center 19th Floor
San Juan, PR 00918
Tel: (787) 274-1212
Fax: (787) 274-1470

s/ NÉSTOR M. MÉNDEZ GÓMEZ
Néstor M. Méndez-Gómez
USDC-PR Bar No. 118409
nmendez@pmalaw.com

s/ MARÍA E. MARTÍNEZ CASADO
María E. Martínez Casado
USDC-PR Bar No. 305309
mmartinez@pmalaw.com