THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ESTANCIAS de CERRO MAR, INC.,** <br><br> Plaintiff, <br><br> v. <br><br> **PUERTO RICO AQUEDUCT AND SEWER AUTHORITY; DORIEL I. PAGAN-CRESPO, in her official capacity,** <br><br> Defendants. | Civ. No. 20-1664 (ADC) |

## OPINION AND ORDER

Before the Court is defendant Puerto Rico Aqueduct and Sewer Authority's (PRASA) motion to dismiss based on lack of subject matter jurisdiction. **ECF No. 9**. Plaintiff Estancias de Cerro Mar, Inc. ("Estancias") filed an objection. **ECF No. 14**. For the following reasons, the motion is **GRANTED IN PART AND DENIED IN PART**.

I.  BACKGROUND

Estancias developed a 175-unit residential community in the municipality of Vega Alta, Puerto Rico called Las Palmas de Cerro Gordo. **ECF No. 1** at 5. As a condition to developing the residential community, Estancias paid for and constructed sewer infrastructure in which rainwater and wastewater collection systems fed into a pump station (the "Estancias pump station"), where the effluent would be relayed to PRASA's wastewater treatment plant in

Dorado. *Id*. PRASA, the public entity designated by law for providing water and sewage services in Puerto Rico, "was directly involved in the entire design and construction process of both the (i) wastewater collection system and the (ii) Estancias Pump Station." *Id*. at 2, 5. It supervised, inspected, and approved the design and construction processes Estancias implemented throughout the project. *Id*. at 5-6.

Upon completion of the residential community, the Estancias pump station was connected to PRASA's system and ownership of the sewer infrastructure, including the pump station, was to be transferred free of charge to the municipality and PRASA. *Id*. The municipality obtained ownership of the rainwater collection system via right-of-way deed. *Id*. at 6. PRASA assumed ownership of the wastewater collection system automatically by operation of law upon the residential community's completion. *Id*. Ownership of the Estancias pump station, however, has yet to transfer from Estancias to PRASA. *Id*.

Estancias claims PRASA has "refused" to accept transfer of the pump station based on "arbitrary and capricious and never-ending" shifting demands that Estancias modify the design of the pump station as a condition of its acceptance of the transfer.[1] *Id*. at 6-7. Estancias asserts it is handicapped from appealing PRASA's decisions because the agency continually shifts the goalposts. PRASA's actions have forced Estancias to operate and maintain the pump station at

---

[1] PRASA contends its refusal is based on its finding "that the Estancias Pump Station as designed and built by developer, did not meet the criteria established by PRASA Rules and Regulations Designed [sic] Standards Manual." **ECF No. 9** at 13.

Estancias' expense, including treating wastewater and rainwater collected in and piped through systems owned by PRASA. *Id*. at 6-7.

In addition, Estancias explains that it, "in good faith," cooperated with the municipality and the Puerto Rico Housing Department on a wastewater project serving a residential community—Villa Alegria—adjacent to its Las Palmas de Cerro Gordo development.[2] *Id*. at 10. It appears the Villa Alegria project essentially superimposed an affordable housing community and wastewater infrastructure on residences already existing on the government property. *Id*. The Housing Department was tasked with developing a wastewater relay station in the community, dubbed the Villa Alegria pump station, wherein the community's effluent would be channeled through the Estancias pump station to the Dorado wastewater treatment plant. *Id*. at 11. PRASA authorized and approved the design and construction of the Villa Alegria pump station. *Id*. Upon the Housing Department's completion of the Villa Alegria project, PRASA "promptly" accepted ownership and control over the Villa Alegria pump station. *Id*.

Plaintiff contends PRASA has since authorized approximately 20 additional units to connect to the Villa Alegria pump station, increasing the stress on the Estancias pump station without Estancias' consent. *Id*. at 13. Estancias believes PRASA has connected at least 50 "unauthorized" residential and commercial units in total to the wastewater and rainwater collection systems feeding into the Estancias pump station. *Id*. Plaintiff also argues that PRASA poorly maintains its infrastructure by, for instance, permitting solids and cloth to flow from the

---

[2] It is unclear from the complaint when the Villa Alegria project occurred during the overall timeline of events.

Villa Alegria pump station to the Estancias pump station. *Id*. at 13-15. This strain has resulted in clogs and wastewater spills from manholes in the serviced communities, prompting intervention by the Environmental Protection Agency. *Id.* at 13.

The ongoing and increasing costs of maintaining and operating the Estancias pump station has allegedly bankrupted Estancias and exposed it to federal environmental penalties under the Clean Water Act. *Id.* at 8. PRASA, in the meantime, has been collecting "millions of dollars" in fees from the communities that feed into the Estancias pump station to maintain and operate those sewage systems and to cover costs related to Clean Water Act violations.[3] *Id.* at 8-9, 11-12.

Estancias filed a complaint on November 21, 2020, seeking injunctive, declaratory, and monetary relief. Estancias asserts PRASA's actions constitute negligence under state law and violate the Takings Clause, the Due Process Clause, and the Equal Protection Clause. *Id.* at 15-19. It brings its constitutional claims under 42 U.S.C. § 1983. **ECF No. 14** at 4. Alternatively, Estancias seeks relief for unjust enrichment. **ECF No. 1** at 20. PRASA contends Estancias' constitutional causes of action fail to state a claim upon which relief may be granted and therefore deprive this court of subject matter jurisdiction. **ECF No. 9** at 4. PRASA seeks dismissal based on Federal Rule of Civil Procedure 12(b)(1) and (6).

---

[3] It is unclear from the complaint if the parties face overlapping or distinct Clean Water Act prosecutions.

## II.  LEGAL STANDARD

In reviewing Rule 12(b)(1) and 12(b)(6) arguments, a court considers the well-pleaded facts alleged in the complaint as true and affords the plaintiff the benefit of all reasonable inferences. *Jalbert v. U.S. Sec. & Exch. Comm'n*, 945 F.3d 587, 590-91 (1st Cir. 2019). "Under the Federal Rules of Civil Procedure, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Cardigan Mountain Sch. v. New Hampshire Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). "To meet that standard, a plaintiff need not demonstrate that [it] is likely to prevail, on its claim, … [r]ather, the complaint need include only enough factual detail to make the asserted claim 'plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (first alteration in original) (additional citations and internal quotation marks omitted).

## III.  ANALYSIS

"To state a claim under section 1983, [a plaintiff] must plead that he was deprived of a constitutional or federal right, that a causal connection existed between [the defendant's] action and the deprivation of that right, and that [defendant's] actions constituted state action." *Alston v. Spiegel*, 988 F.3d 564, 574 (1st Cir. 2021).

### A.  Fifth Amendment Cause of Action

The Fifth Amendment of the Constitution prohibits government taking of private property for public use without just compensation. U.S. Const. amend. V. Estancias alleges the continuing and increasing costs caused by PRASA's arbitrary refusal to accept transfer of the

pump station and its ongoing use of the station to provide a public service amount to a taking. **ECF No. 1** at 15-17. Estancias also claims that PRASA's actions have deprived it "of all economically beneficial use of its property and/or interfered with [its] use of its property" without just compensation. *Id.* at 15.

PRASA contends dismissal is required due to Estancias' failure to exhaust administrative remedies. **ECF No. 9** at 15. PRASA's argument starts and ends with that statement. Nonetheless, little elaboration is needed to reject the contention. There is no exhaustion requirement in takings cases. *Knick v. Township of Scott, PA*, 139 S.Ct. 2162, 2170-73, 2177 (2019). Moreover, "the settled rule is that exhaustion of state remedies is *not* a prerequisite to an action under [42 U.S.C.] § 1983." *Id.* at 2167 (citations and internal quotation marks omitted) (alteration in original).

PRASA has not raised any other arguments against Estancias' takings claim and the Court declines to search for them itself. *See Rivera-Gómez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly …." (citation and internal quotation marks omitted)). PRASA's request for dismissal of this claim is denied.

**B.     Due Process Cause of Action**

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The

fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333 (citation and internal quotation marks omitted).

Estancias claims PRASA's administrative remedies and requirements are a moving target, leaving it with no opportunity to meaningfully challenge PRASA's actions harming the pump station, including its unilateral decisions to tie more units into the system. **ECF No. 1** at 17-18. As above, though with a bit more gusto, PRASA argues that Estancias' due process claim fails because Estancias has not exhausted its administrative remedies. **ECF No. 9** at 9-10. PRASA highlights some of the administrative remedies purportedly available to Estancias. *Id.* at 11-13.

PRASA's approach misses the mark. Estancias is asserting PRASA's processes are not meaningful, a "fundamental" attribute of adequate due process. *See Matthews*, 424 U.S. at 333. And, as indicated above, the United States Supreme Court has stated repeatedly and "categorically that exhaustion is not a prerequisite to an action under § 1983" absent a statutory mandate. *Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496, 500-01, 512 (1982). No such mandate exists here. Accordingly, the Court finds Estancias' allegations that PRASA is playing a game of legal whack-a-mole sufficient to withstand PRASA's motion to dismiss this claim.

C.     **Equal Protection Cause of Action**

Estancias centers its equal protection claim on PRASA's refusal to accept ownership of its pump station vis-à-vis its prompt acceptance of ownership of the similarly situated Villa Alegria pump station. **ECF No. 1** at 18-19. PRASA contends Estancias cannot bring a claim under

the Equal Protection Clause because it has failed to allege impermissible discrimination, gross abuse of power, or identify a "similarly-situated" entity. **ECF No. 9** at 16.

"Under the Equal Protection Clause, similarly situated entities must be accorded similar governmental treatment." *Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 7 (1st Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985)). An entity plaintiff must "allege facts indicating that, compared with others similarly situated, [it] was selectively treated … based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Id*. (emphases, citation, and internal quotation marks omitted) (alteration and omission in original). While "[t]he formula for determining whether individuals or entities are 'similarly situated' for equal protection purposes is not always susceptible to precise demarcation," the "test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." *Id.* at 8 (citations and internal quotation marks omitted).

The Court does not see any such similarity here. Notably, the Puerto Rico Housing Department, a state entity, led the Villa Alegria project. And, the Villa Alegria project did not develop housing on a blank slate but established an affordable housing community for existing residents and installed basic infrastructure. Third, although the developments consisted of a similar number of residential units—146 at Villa Alegria and 175 at Las Palmas de Cerro Gordo—there is no allegation that the Villa Alegria and Estancias pump stations were intended

to meet similar operational purposes or specifications. **ECF No. 1** at 5, 10. Indeed, it appears the Estancias pump station was developed with the understanding it was to relay both the Las Palmas de Cerro Gordo community's effluent and Villa Alegria's. In other words, neither the entities nor the projects appear similarly situated as alleged. Accordingly, Estancias' equal protection claim is dismissed.[4]

### III. CONCLUSION

PRASA's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. **ECF No. 9**. Estancias' third cause of action, seeking relief under the equal protection clause, is dismissed without prejudice.[5] The remainder of Estancias' complaint passes Rule 12(b) muster.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 27th day of August 2021.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**

---

[4] Estancias offers a class-of-one theory as an alternative route to equal protection relief. **ECF No. 14** at 11. This argument fails for same reason: inadequate pleading of the "similarly situated" element. *See Walsh v. Town of Lakeville*, 431 F.Supp.2d 134, 143-145 (D. Mass. 2006) (explaining the parameters of the class-of-one theory within this circuit).

[5] Estancias' claim is dismissed without prejudice, allowing it the opportunity to request leave to amend, e.g., in the event it can identify appropriate similarly situated comparators.