IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ESTANCIAS DE CERRO MAR, INC., <br><br> Plaintiff, <br><br> v. <br><br> PUERTO RICO AQUEDUCT AND SEWER AUTHORITY, et al., <br><br> Defendants. | CIVIL NO. 20-1664 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

The present case arises from the construction, operation and maintenance of a pump station located in Vega Alta, Puerto Rico. Plaintiff Estancias de Cerro Mar ("Plaintiff" or "Estancias") is a private corporation dedicated to developing residential communities on the north coast of Puerto Rico. Co-Defendant Puerto Rico Aqueduct and Sewer Authority ("PRASA") is a public corporation responsible for providing water and sanitary services throughout Puerto Rico. Co-Defendant Doriel I. Pagán-Crespo is PRASA's Executive President. Co-Defendant William Rodríguez-Rodríguez ("Co-Defendant Rodríguez" or "the Secretary"), sued only in his official capacity, is the Secretary of the Puerto Rico Department of Housing ("PRDH"), which is not a party to this case.

Plaintiff filed this case seeking declaratory and injunctive relief, averring that Defendants violated its constitutional rights, including the taking of Estancias' property without just compensation, as well as its due process and equal protection rights. Plaintiff

Case 3:20-cv-01664-CVR   Document 119   Filed 11/15/23   Page 2 of 11

Estancias de Cerro Mar, Inc. v. Puerto Rico Aqueduct and Sewer Authority, et al.
Opinion and Order
Civil 20-1664 (CVR)
Page 2
_____

also brings forth an unjust enrichment claim and seeks damages due to Defendants' actions.

Before the Court is the Secretary's "Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted" in which he proffers that Plaintiff has failed to state a claim against him, insofar as the injunction instituted by the Title III Court under the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101-2241, bars the present case against him. In the alternative, the Secretary avers that, even if the claims against him are not precluded by PROMESA, they are time-barred. (Docket No. 104).

Plaintiff opposes the request, arguing that the claims against the Secretary are post-petition claims which fall outside the scope of the injunction. (Docket No. 117).

For the reasons explained below, the Court hereby GRANTS the Secretary's Motion to Dismiss.

## STANDARD

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "short and plain" statement needs only enough detail to provide a defendant with " 'fair notice of what the … claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007); see also Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement….' Specific facts are not necessary."). In order to "show" an entitlement to relief, a complaint must contain enough factual material "to raise a right to relief above the speculative level on the assumption that all the allegations

Case 3:20-cv-01664-CVR   Document 119   Filed 11/15/23   Page 3 of 11

Estancias de Cerro Mar, Inc. v. Puerto Rico Aqueduct and Sewer Authority, et al.
Opinion and Order
Civil 20-1664 (CVR)
Page 3
_____

in the complaint are true (even if doubtful in fact)." See Twombly, 550 U.S. at 555, 127 S.Ct. 1955.

When addressing a motion to dismiss under Rule 12, the court must "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiffs." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48-49 (1st Cir. 2009). Under Twombly, 550 U.S. at 555, however, a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." See also Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). A plaintiff is now required to present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). Id. at 570; see, e.g. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009).

**STATEMENT OF FACTS**

The Court accepts Plaintiff's allegations as true for purposes of the Motion to Dismiss. Ponsa-Rabell v. Santander Sec., LLC, 35 F.4th 26, 30 (1st Cir. 2022); O'Brien v. Deutsche Bank Nat'l Tr. Co., 948 F.3d 31, 35 (1st Cir. 2020).

Plaintiff was hired to develop a residential project in the municipality of Vega Alta, which required the construction of a system to collect rainwater and wastewater, as well as a wastewater pump relay station ("pump station"). The discharge from the residences would pass through the pump station and would ultimately be relayed to PRASA's wastewater treatment plant in Dorado. Estancias paid for and constructed the pump station. PRASA was involved in the pump station's design and construction process, and also supervised, inspected, and approved its construction. The pump station would be connected to PRASA's existing system, and eventually, ownership of the complete sewer

Case 3:20-cv-01664-CVR   Document 119   Filed 11/15/23   Page 4 of 11

Estancias de Cerro Mar, Inc. v. Puerto Rico Aqueduct and Sewer Authority, et al.
Opinion and Order
Civil 20-1664 (CVR)
Page 4
_____

infrastructure, including the pump station, was to be transferred free of charge to the municipality and to PRASA.  After the residential portion of the project was finished, PRASA assumed ownership of the wastewater collection system automatically by operation of law, and the municipality obtained ownership of the rainwater collection system via a right-of-way deed.  The only outstanding matter was the transfer of the pump station, which Plaintiff avers PRASA refused to accept, based on arbitrary, capricious and changing demands of the pump station's design.  Plaintiff proffers it has economically maintained the pump station for years, subsidizing PRASA's operations and incurring in substantial costs to its detriment, to the point of rendering it insolvent.

As it pertains to the Secretary, Plaintiff argues it cooperated in good faith with the PRDH on a similar wastewater project serving the nearby Villa Alegría residential community.  The PRDH had been tasked with developing the Villa Alegría's pump station, a wastewater relay station which would connect to the Estancias' pump station and continue through to the Dorado wastewater treatment plant.  The Villa Alegría's pump station would serve a certain number of units in Villa Alegría, and Estancias was paid a specific amount of money for each unit connected from the Villa Alegría development to the Estancias' pump station.

As in the case of the Estancias' pump station, PRASA authorized and approved the design and construction of the Villa Alegría's pump project.  However, when it was completed, PRASA accepted its ownership and control, which occurred around 2015, but has continued to refuse acceptance of the Estancias' pump station.  Plaintiff further contends that PRASA has since connected additional units to the Villa Alegría's pump station, increasing the volume that passes through the Estancias' pump station, all

without Estancias' consent and without any additional payment. The excess amount of sewage and waste has caused malfunctions and an increase in the maintenance costs of the Estancias' pump station, all which have caused harm to Plaintiff. The ongoing and increasing costs of maintaining and operating the Estancias' pump station for years has rendered Plaintiff insolvent and exposed it to federal environmental penalties under the Clean Water Act.

## LEGAL ANALYSIS

Plaintiff seeks declaratory and injunctive relief against the Secretary, as Director of the PRDH, alleging his actions have effected a taking, as well as bringing claims in tort and for unjust enrichment. The Secretary requests dismissal of all causes of action against him, arguing that the lawsuit against him, in his official capacity, is merely another way to bring an action against the PRDH and any such claim is barred by the permanent injunction in place in the PROMESA case. The Secretary also mentions in passing in a footnote that, even if the case was not precluded by PROMESA, any claim against the Secretary and/or the PRDH would be time-barred.

Plaintiff by-passes the issue of whether or not the Secretary is the proper party, and argues its opposition on the merits. It proffers that the claims in the present case arose post-petition and thus fall outside the scope of the Title III proceeding. Plaintiff's position is that the violations are ongoing and continuing, for which it requests only prospective relief, arguing it would be an absurd result for the Court to hold that ongoing violations suffered after the effective date of the PROMESA injunction could not be redressed. Plaintiff cites to the case of In re: The Fin. Oversight and Mgmt. Bd., 41 F.4th 29 (1st Cir. 2022) for the proposition that "otherwise valid Fifth Amendment takings

claims arising prepetition cannot be discharged in Title III bankruptcy proceedings without payment of just compensation." (Docket No. 117, p. 8). The Court cannot agree.

As is well known, on May 3, 2017, the Financial Oversight and Management Board for Puerto Rico filed a voluntary petition for relief in bankruptcy on behalf of the Commonwealth of Puerto Rico pursuant to PROMESA § 304(a). After much negotiating, on January 18, 2022, the Court entered an Order and Judgment ("the Confirmation Order") confirming a plan ("the Plan") that would govern subsequent proceedings. On March 15, 2022, the Plan became effective, and after that date, the Confirmation Order permanently enjoined parties from "*commencing or continuing, directly or indirectly ... any action or other proceeding* (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind" regarding any discharged claims against the Debtor. (Case No. 17-3283, Docket No. 19813, "Confirmation Order" at ¶ 59) (emphasis added).

The Plan discharged and released the Debtor from any and all claims "*that arose, in whole or in part, prior to the Effective Date.*" (Case No. 17-3283, Docket No. 19784, Plan at § 92.2(a); Confirmation Order at ¶ 56) (emphasis added). Section 1.135 of the Plan defined "Claim" as:

> *Any right to payment or performance, whether or not such right is reduced to judgment*, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, *known or unknown or asserted or unasserted*; or any right to an *equitable remedy for breach or enforcement of performance*, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, *obligations, judgments, actions, Causes of Action, demands, or*

> *claims of every kind or nature whatsoever, in law, at equity, or otherwise.* (emphasis added).

Covered by the permanent injunction were "[a]ny agency, department, office, public corporation, trust, fund, system, instrumentality, political subdivision, taxing authority, or municipality of the Government of Puerto Rico." (Plan at § 1.275).

Plaintiff proffers that the injuries it has suffered are ongoing and must be redressed, but the Plan was clear in that it applied to any and all claims, that arose, in whole or in part, prior to its effective date. There is no doubt that the actions complained of in the present case arose prior to the Plan's effective date. The Amended Complaint is largely devoid of specific dates,[1] but it does mention, for instance, that the transfer of the Villa Alegría's pump to PRASA came about in 2015, eight years ago, and the Amended Complaint shows that by that time, the Estancias' pump had already been built and was operational.[2] Furthermore, the Amended Complaint states that PRASA approved the design of the Estancias' pump station in the year 2000. On the other hand, the contract between Plaintiff and the PRDH to connect the Villa Alegría's pump to the Estancias' pump was signed in 2007 and Plaintiff avers that "an essential consideration for entering into the Villa Alegría connection contact was that the Estancias Pump Station was to be transferred to PRASA within the year for PRASA to assume its control and maintenance obligations...", that is to say, by 2008. (Docket No. 72, p. 15, ¶47). Finally, PRASA's alleged continued refusal to accept the Estancias' pump, which more recently occurred in

---

[1] The Court notes that the Amended Complaint is silent about the dates in which most of the facts occurred. It is evident to the naked eye, however, that the claims in this case have been ongoing for a number of years, and insofar as Plaintiff claims damages under Puerto Rico Civil Code Article 1802 for Defendants' actions, the claims raised herein may be time-barred against PRASA. The Court will refrain from making this assessment at this juncture, in the absence of a more developed record.

[2] The Villa Alegría's pump relays its sewage through the Estancias' pump. As such, the Estancia's pump must have already existed when the Villa Alegría's pump became operational.

Case 3:20-cv-01664-CVR   Document 119   Filed 11/15/23   Page 8 of 11

Estancias de Cerro Mar, Inc. v. Puerto Rico Aqueduct and Sewer Authority, et al.
Opinion and Order
Civil 20-1664 (CVR)
Page 8
_____

2019 and 2020, also took place before the effective date of the Plan. Consequently, it is evident to the Court that the claims in this case against the Secretary arose before the Plan's effective date and are therefore barred by the injunction in place.

The Plan also was clear in that it applied, among others, to any "*equitable remedy for breach or enforcement of performance.*" (Plan at § 1.135) (emphasis added). In Plaintiff's opposition, it states that the relief requested is prospective only. It urges the Secretary to allow the disconnection of the Villa Alegría's pump from the Estancias' pump, arguing there is no legal basis for Estancias to continue providing this service since the contract between the parties has long expired. In requesting this relief, however, Plaintiff is clearly seeking performance by the Secretary, which is also barred by the injunction. The fact that the Plan applies to "claims of every kind or nature whatsoever, in law, at equity, or otherwise", is broad and all-encompassing and plainly applies to the causes of action raised against the Secretary in this case. (Plan at § 1.135).

To avoid dismissal, Plaintiff conveniently asserts at the end of its opposition that its takings claims are *prepetition,* which may not be discharged pursuant to caselaw, while at the same time arguing that the claims are continuous and ongoing and arose *after* the Plan's effective date and therefore not barred. Cf. Docket No. 117, pp. 8 and 2. ("Valid Fifth Amendment takings claims arising prepetition cannot be discharged in Title III bankruptcy proceedings without payment of just compensation", and "The claims arising from violations that continue to occur after the injunction took effect, are not the type of prepetition or pre-confirmation claims, have therefore not been discharged and, in turn, fall outside the scope of the injunction"). This Court has already decided that all the

Case 3:20-cv-01664-CVR   Document 119   Filed 11/15/23   Page 9 of 11

Estancias de Cerro Mar, Inc. v. Puerto Rico Aqueduct and Sewer Authority, et al.
Opinion and Order
Civil 20-1664 (CVR)
Page 9
_____

claims herein against the Secretary arose prepetition, and for this reason, the tort and unjust enrichment claims are precluded.

The Court must now determine whether Plaintiff's prepetition taking claim survives in light of the First Circuit's holding in the Financial Oversight case. The Court finds it does not.

As part of its debt restructuring process, the Title III Court permitted administrative claims to be filed, which would in turn, preserve a claimant's existing case and constitute an exception to the existing injunction. The Confirmation Order provided that "[t]he last day to file proof of Administrative Expense Claims shall be ninety (90) days after the Effective Date." (Confirmation Order at ¶ 44). After this date, any Administrative Expense Claim would be forever barred. Id. The deadline to file proofs of administrative expense claims was initially June 13, 2022, and was later extended to January 18, 2023 solely for parties who could establish that they had not been served with the initial notice of the claim bar date. (Case No. 17-3283, Docket No. 22650). Plaintiff's opposition is silent as to this matter, so the Court understands that Estancias filed no administrative claim before the Title III Court. For this reason, the Court finds Plaintiff failed to preserve its taking claim before the Title III Court and is therefore barred from raising it now.

Indeed, the ultimate difference between the Financial Oversight case and the present one is that an administrative claim *was* filed by the parties objecting to the Plan there. Plaintiff has not evidenced any such filing in this case before this Court. Thus, the Fifth Amendment taking claim brought against the Secretary, to the extent that the Court

Case 3:20-cv-01664-CVR   Document 119   Filed 11/15/23   Page 10 of 11

Estancias de Cerro Mar, Inc. v. Puerto Rico Aqueduct and Sewer Authority, et al.
Opinion and Order
Civil 20-1664 (CVR)
Page 10
_____

may eventually determine it has merit, was not preserved.  For this reason, the Financial Oversight case is inapposite.

In sum, the Court finds the administrative claim exception is inapplicable to the present case.  All of Plaintiff's claims against the Secretary fall within the discharge and subsequent injunction provided for in the Plan and Confirmation Order and are therefore precluded.

The Court additionally finds merit to the Secretary's argument that Plaintiff's claims are barred for another reason, namely, that it was filed against Secretary Rodríguez in his official capacity only.  Plaintiff brought suit against the Secretary officially, averring he acted "under color of state law and deprived Estancias of its federal constitutional rights." (Docket No. 72, p. 26).  It has long been held that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."  Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105 (1985) (*quoting* Monell v. New York City Dept. of Social Serv's, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035 (1978).  An official-capacity suit is to be treated, in all respects other than name, as a suit against the governmental entity.  Brandon v. Holt, 469 U.S. 464, 471-72, 105 S.Ct. 873, 878 (1985).  As the real party in interest is the entity itself, the claims brought against the Secretary must be considered a suit against the PRDH itself.

As such, the Court finds that the holdings of Monell and Graham squarely apply to the claims raised against the Secretary, insofar as they are considered to have been filed against the agency.  To the extent that the injunction in place bars parties from seeking relief against any agency of the Commonwealth of Puerto Rico, it likewise precludes Plaintiff from bringing this case against the Secretary, in his official capacity.

## CONCLUSION

For the above-mentioned reasons, the Secretary's "Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted" is GRANTED. (Docket No. 104). All claims against co-Defendant Rodríguez are hereby DISMISSED WITH PREJUDICE.

Partial Judgment will be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 15th day of November 2023.

                                           S/CAMILLE L. VELEZ-RIVE
                                           CAMILLE L. VELEZ RIVE
                                           UNITED STATES DISTRICT JUDGE